COPY

Joshua R. Furman, Bar No. 225461
jrf@furmanlawyers.com
JOSHUA R. FURMAN LAW CORPORATION
9663 Santa Monica Boulevard, No. 721
Beverly Hills, California 90210
Telephone:   (310) 809-3016
Facsimile:    (310) 861-0449

*Attorney for Plaintiffs,*
DALE EGELHOFF & LAURIE EGELHOFF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DALE EGELHOFF, LAURIE
EGLEHOFF,

            Plaintiffs,

      v.

PACIFIC LIGHTWAVE, A
CALIFORNIA CORPORATION;
COVE ELECTRIC, INC., a
California corporation; SIMON
BOJKOVSKY, an individual;
ALLISON BOJKOVSKY, an
individual; and DOES 1–10,
inclusive,

            Defendants.

CASE NO. CV12 - 4745 - RGK (DTB)

**COMPLAINT FOR:**

1. **COPYRIGHT INFRINGEMENT**

2. **BEACH OF CONTRACT**

3. **INTERCEPTION OF ELECTRONIC COMMUNICATIONS**

4. **UNAUTHORIZED ACCESS OF ELECTRONIC COMMUNICATIONS**

5. **VIOLATION OF COMPUTER FRAUD AND ABUSE ACT**

6. **VIOLATION OF CALIFORNIA PUBLIC UTILITIES ACT**

7. **VIOLATION OF CALIFORNIA PENAL CODE, SECTION 502**

8. **TRESPASS TO CHATTELS**

9. **INVASION OF PRIVACY**

10. **VIOLATION OF CALIFORNIA LABOR CODE, SECTION 202**

**DEMAND FOR JURY TRIAL**

///

Complaint

Plaintiffs DALE EGELHOFF and LAURIE EGELHOFF allege the following:

### PARTIES

1. Plaintiff DALE EGELHOFF is an individual residing in Roseville, California.

2. Plaintiff LAURIE EGELHOFF is an individual residing in Roseville, California.

3. Defendant PACIFIC LIGHTWAVE, A CALIFORNIA CORPORATION is a California corporation with a primary place of business in Palm Desert, California.

4. Defendant COVE ELECTRIC, INC. is a California corporation with a primary place of business in Palm Desert, California.

5. On information and belief, Defendant SIMON BOJKOVSKY is an individual residing in La Quinta, California.

6. On information and belief, Defendant ALLISON BOJKOVSKY is an individual residing in La Quinta, California.

7. Plaintiff is unaware of the names and true capacities of defendants, whether individual, corporate and/or partnership entities, named herein as DOES 1 through 10, inclusive, and therefore sues them by their fictitious names. Plaintiff will seek leave to amend this Complaint when their true names and capacities are ascertained. Plaintiff is informed and believes, and based thereon alleges, that said defendants and DOES 1 through 10, inclusive, are in some manner responsible for the wrongs alleged herein, and that at all times referenced each was the agent and servant of the other defendants and was acting within the course and scope of said agency and employment. Plaintiff is informed and believes, and based thereon alleges, that said defendants and DOES 1 through 10, inclusive, entered into a conspiracy with each other to plan and commit the wrongs alleged herein.

8.     Plaintiff is informed and believe, and based thereon allege, that at all relevant times herein, each of the defendants, including DOES 1 through 10, inclusive (collectively "Defendants") directed, knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their actions and/or inaction directed, ratified and encouraged such acts and behavior.  Plaintiff further alleges that Defendants had a non-delegable duty to prevent such acts and the behavior described herein, which duty Defendants failed and/or refused to perform.

9.     Plaintiff is informed and believes, and based thereon alleges, that at all times relevant herein, named Defendants were the controlling principals for each other, and at all times relevant hereto were, the alter egos of each other and there exists, and existed at all times relevant hereto, a unity of interest between said Defendants such that any separateness between them has ceased to exist.  On information and belief, and based thereon, the Defendants have used the assets of PACIFIC LIGHTWAVE, A CALIFORNIA CORPORATION and COVE ELECTRIC, INC. (collectively, the "Corporations"), and each of them, for personal use and the use of the other corporation, caused assets of the Corporations, and each of them, to be transferred to themselves without adequate consideration, and withdrew money from corporate accounts for personal use and for the use of the other corporation.  The Defendants have exercised complete control and dominion over the Corporations, and each of them, to the extent that any separateness between them has ceased to exist.  The Corporations, are, and, at all times relevant hereto were, (a) mere shell(s), instrumentality(ies), and conduit(s) through which the Defendants carried on their business by carrying out the business of the Corporations without the holding of legitimate directors' or shareholders' meetings, by failing to maintain records or minutes of corporate proceedings, and by entering into personal transactions, and transactions between the Corporations, without authorization.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1338.

11.     Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b), (c) or 1400 in that, on information and belief, Defendants reside and have done and do business in this district, including the acts of infringement pled herein, and a substantial part of the events giving rise to Plaintiff's claims occurred in or were aimed at this judicial district, including performance of the contracts at issue herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Background

12.     Plaintiff DALE EGELHOFF ("Dale") is a highly qualified and experienced telecommunications engineer and manager.  Dale has nearly 40 years of experience in telecommunications facility management and telecommunications engineering including network design and administration, computer programming and data traffic management, and telephony service administration.

13.     During or about April 2007, Plaintiff Dale was engaged by Larry Bojkovsky on behalf of Linknet Communications, Inc. to undertake the telecommunications operations of Linknet.  Larry Bojkovsky is the now-deceased father of Defendant SIMON BOJKOVSKY ("Simon").

14.     At the time of engagement, Larry Bojkovsky agreed that Dale would be paid a consulting fee of $5,000 per month.  Larry Bojkovsky paid Dale through his other company, Defendant COVE ELECTRIC, INC. ("Cove").  Dale did not become an employee of Linknet or Cove.  The consulting fee paid by Cove was a retainer to ensure that Dale was available whenever Cove required his expertise in the course of establishing its telecommunications business through Linknet or otherwise.

15.     No work-for-hire agreement was executed between Dale and Linknet or Cove.

16.     In October of 2007, Larry Bojkovsky and Dale entered into a new agreement wherein Dale would work as an independent contractor for Cove fulltime for $7,500 per month for the remainder of 2007 and would start a salary of $150,000 per year in January 2008.

17.     Subsequently, Larry Bojkovsky decided to transition the Linknet business into another corporation with his son, Simon and Dale running the business. Dale was to oversee operations of the new company because only Dale had the technical expertise to do so. As a result of the transition, and Larry Bojkovsky's health concerns, Dale agreed with Larry Bojkovsky to maintain his pay as a contractor at $7,500 per month and would instead take a $60,000 bonus at the end of 2008.

18.     Eventually, Larry Bojkovsky, due to health concerns, determined that he wanted to provide ownership of PLW to Dale and Simon only, and did not wish to retain ownership rights unless he fully recovered from his illness. Accordingly, in late 2008 and early 2009, Dale and Simon each provided capital contributions to PLW. In the interim, Larry Bojkovsky passed away.

19.     During 2008 and into 2009, Dale transitioned into working for the new company, Defendant PACIFIC LIGHTWAVE, A CALIFORNIA CORPORATION ("PLW"). Dale continued to work on behalf of PLW pursuant to the same arrangement with Larry Bojkovksy, who was paid through Cove.

20.     Cove also provided an initial capital contribution to fund PLW's purchase of telecommunications equipment and siting rights.

21.     The arrangement between Dale and Larry Bojkovsky for the operation of these businesses remained, in essence, that Dale provided the technical know-how and Larry Bojkovksy, through Cove, provided the infrastructure and funding.

22.     Dale's technical expertise and years of experience were necessary for PLW's application process to receive Competitive Local Exchange Carrer (CLEC) credentialing from the California Public Utilities Commission.   On the strength of Dale's technical qualifications, PLW received a Certificate of Public Convenience and Necessity to provide local exchange services from the California Public Utilities Commission on January 25, 2010.   The issuance of the certificate subjected PLW to compliance with the California Public Utilities Act.

23.     In addition to the PUC certification, Dale utilized his technical expertise in procuring and providing FCC radio frequency licenses for PLW's wireless operations.   The FCC licenses for the relevant spectrum are not exclusive, but they are nonetheless necessary for certain transmissions utilized by PLW's equipment.

24.     Thereafter, on April 29, 2009, PLW issued equal shares of stock to Dale and Simon.   A third numerically equal share of stock was also issued in the name of Defendant ALLISON BOJKOVSKY, Simon's wife.   On the date that the stock was issued, Simon assured Dale that Allison's stock would be in name only in order to "secure" the capital contributions of Cove and ensure that they were paid back.

25.     Dale continued to work on behalf of Linknet and then PLW until November 2010.   During that time, Dale was functionally the sole executive and manager in charge of business operations.   Other than employees working under Dale's supervision, no one else was involved in the daily operation of the company.

26.     PLW's customer base grew on word of mouth.   Dale single-handedly developed the business of PLW by providing new client intake and technical analysis of the clients' communications needs, and by designing and implementing the network infrastructure to provide telecommunications services to the Coachella Valley.

27.     Dale also personally negotiated and developed over 10 rooftop and tower-based antenna sites throughout the area.  The siting rights procured by Dale provided, in most cases, for multi-year antenna location rights for PLW's equipment, allowing access to fiber optic patch points and superior wireless signal clarity.    These assets were hard-won and are the backbone of a telecommunications company like PLW, making them invaluable to PLW and its business.

28.     Dale's wife, Plaintiff LAURIE EGELHOFF, also performed some work for PLW helping with invoicing, accounts receivable and payable, data entry, and other matters.  Laurie was not paid for these services, but performed them solely to help out her husband.  In the course of performing these tasks, Laurie used PLW computers at the PLW office location.

29.     Both Laurie and Dale occasionally used PLW computers to access personal email and other personal accounts, such as Facebook.

**The Copyrighted Software**

30.     One of the tasks that Dale undertook on behalf of Linknet and PLW was to develop certain proprietary software to monitor the status of a telecommunication company's operational assets and report faults or errors to operators.  That software eventually became known as the "Pacific Lightwave AP Manager."

31.     No work-for-hire agreement was executed between Dale or any other party, including PLW or Simon, regarding copyright in the "Pacific Lightwave AP Manager."

32.     The "Pacific Lightwave AP Manager" is the subject of United States Copyright Office Certificate of Registration Number TXu 1-801-349 naming Dale as the author and copyright claimant.

33.     Dale remains the sole copyright holder for the Pacific Lightwave AP Manager, which has never been the subject of any agreements between the parties.

**Compensation and Failure to Pay Wages**

34.    In exchange for Dale's work for Linknet and PLW, Dale was initially paid by Cove as an independent contractor pursuant to an oral agreement between Dale and Larry Bojkovsky.

35.    The terms of the initial fulltime agreement were that Dale was to be paid $7,500 per month by Cove without withholdings and then issued a 1099 at the end of each year for the amounts paid.  Dale was then to receive a "bonus" at the end of the year to bring his pay up to the full $150,000 level he was promised by Larry Bojkovsky.

36.    When Dale approached Cove in April of 2009 and requested a 1099 for 2008 as well as the tax "bonus," the CFO of Cove, Jeannie Stewart, informed him that, "we decided not to this year" and did not provide a 1099 form.  When Dale pressed the matter stated, "I did want to show some income, can it still be done?"  Ms. Stewart responded that doing so "would raise a red flag with the CPA" and refused.

37.    Immediately after these emails, Jeannie Stewart called Dale into her office for a meeting with Simon.  At the meeting, Dale was told by Jeannie Stewart and Simon to just "keep quiet" about his income from Cove and that he should be happy with his equity interest in PLW, and to stop complaining about the bonus.

38.    In the course of stating their arguments, Simon and Jeannie Stewart specifically pointed out that Dale was entitled to a 50 percent interest in PLW.

39.    Dale never received a 1099 from Cove or any other entity for 2008.

40.    Cove failed to pay the bonus for 2008.

41.    Following Larry Bojkovsky's death, Dale agree to work for $7,500 a month for PLW while it was getting established and did not assume the $150,000 salary again until 2010.

42.    In April of 2010, Dale became a regular employee of PLW at an

1  annual salary of $150,000 as well as serving on the Board of Directors and as Vice

2  President and Secretary.

3      43.    Through 2010, Dale did not take pay for five full or partial pay

4  periods, totaling losses of $20,247.06, which Dale intended to make up at the end

5  of the year.

6      44.    Of the amount that Dale did not take as pay, $7,623.52 of it was

7  diverted to Simon's personal benefit as a loan.

8  **The Bojkovskys Attempt to Remove Dale from PLW**

9      45.    On November 10, 2010, Simon called a meeting of the board of

10  directors of PLW.  The meeting was attended by Simon, Allison, and Dale.

11  Simon announced that, "the election of new officers was in order."  Between

12  Allison and Simon, it was moved and seconded that Allison be appointed

13  "CFO/Treasurer" and "Secretary."  Dale was also removed as Secretary at that

14  time.

15      46.    Dale objected that Allison have any office and further objected that

16  Allison have any voting rights as it was contrary to the previous agreement

17  between Dale and Simon.

18      47.    In addition, the bylaws of PLW listed only Dale and Simon as

19  directors and no vote had been taken to increase the number of directors or

20  confirm Allison as an additional director.  The irregularity of the makeup of the

21  board was compounded by the fact that the bylaws called for the board of PLW to

22  have one director, and those bylaws were never amended.

23      48.    Dale's concerns were ignored and Allison was appointed to the

24  above-stated offices by a vote of Simon and Allison.

25      49.    At that point, Dale was told that Simon and Allison were "taking

26  over the company," and further that Dale was "out" of PLW and that he would

27  "get nothing."

28      50.    Subsequently, Simon and Allison prepared additional board meeting

1    minutes dated November 17, 2010, purporting to terminate Dale's employment

2    from PLW because he had not responded to an email.  Simultaneously, Simon and

3    Allison declared that Dale was no longer Vice President and Secretary of PLW,

4    despite having previously removed Dale on as Secretary on November 10, 2010.

5        51.    Dale was not provided with notice of the November 17, 2010, board

6    of directors meeting.

7        52.    Dale was underpaid $5,794.63 for his final pay period at PLW, was

8    barred from the corporate offices, and refused access to corporate records,

9    including board meeting minutes.

10       53.    To further pressure Dale to abandon his rights in connection with

11   PLW, Simon caused to be filed a trumped-up lawsuit in the Riverside Superior

12   Court, known as *Pacific Lightwave v. Egelhoff*, Case No. INC 1011445 ("*PLW*

13   *Case I*").  That action is currently pending.

14       54.    Dale later learned that Simon was misappropriating PLW assets for

15   the benefit of himself and Allison, including writing corporate checks to Allison's

16   benefit for no apparent reason.

17       55.    In light of Simon's misfeasance and the inability for the board

18   members function in a business-like manner, Dale filed a petition for dissolution

19   of PLW in Riverside Superior Court, known as *In re Pacific Lightwave, A*

20   *California Corporation*, Case No. INC 1203195 ("*PLW Case II*").  That action is

21   also currently pending.

22       **Hacking of the Egelhoffs' Accounts and Property Destruction**

23       56.    Unbeknownst to Dale or Laurie, Simon had installed logging

24   software on the PLW network.  The logging software tracked and recorded all

25   passwords entered on computers that accessed the Internet through the PLW

26   network without the knowledge of the user—in this case Dale or Laurie.  The

27   logging software logged the activities of both users within PLW's offices and

28   public users who accessed the network through PLW's utilities services.

57.    On or before October 28, 2011, Allison used the information retrieved by Simon from the logging software to hack into Laurie's Facebook account and read private messages between Laurie and her daughter.  Allison and Simon then attached these messages to filings and discovery in *PLW Case I*, exposing Laurie's private messages to the general public.  Laurie has never authorized Allison or anyone else to access the private messages on her Facebook account.

58.    On or about December 1 & 2, 2010, Simon or Does 1 or 2 used the information retrieved by Simon from the logging software to access Dale's licensure account with the FCC.  Dale had only accessed the account from outside the PLW offices, using his personal PLW internet access as a PLW customer, to access this account.  Simon then fraudulently transferred FCC licenses between Dale's account and an account he created for himself, forcing Dale to re-obtain his own licenses.

59.    On or about December 13, 2010, Simon, Allison, or Does 1 or 2 used the information retrieved by Simon from the logging software to hack into Dale's personal email account and delete all of the emails on the server at the time.  These emails included all of Dale's professional prospects at the time because he was looking for new endeavors after being ejected from PLW and all of his emails related to his own business developing telecommunications devices.  The intruder also reviewed and/or retained all of these private emails.  Dale has never authorized anyone else to access his personal email account, let alone make permanent changes and destroy messages.

60.    On or before October 28, 2011, Simon "intercepted" an email and a contract attached thereto on Dale's private email account.  In discovery responses sworn under penalty of perjury in *PLW Case I*, PLW asserted: "SIMON ***intercepted*** an email to Egelhoff from Doug Vance of the Berger Foundation." (Emphasis added.)

# FIRST CAUSE OF ACTION FOR

# COPYRIGHT INFRINGEMENT

### (By Dale Egelhoff Against Defendant Pacific Lightwave,

### A California Corporation & Does)

61.     Plaintiffs incorporate by reference paragraphs 1 through 60 of this Complaint as though set forth herein in their entirety.

62.     At all times relevant hereto, Dale has been the producer and owner of the Pacific Lightwave AP Manager.

63.     Dale holds a copyright registration certificate for the Pacific Lightwave AP Manager from the United States Copyright Office as set forth above.

64.     Without authorization, color of title, or license, PLW used the Pacific Lightwave AP Manager in connection with its ongoing commercial enterprise.

65.     Dale did not authorize PLW's reproducing, displaying, distributing, broadcasting, or creation of derivative works of or incorporating the work at issue.

66.     Simon infringed Dale's copyrights in the Pacific Lightwave AP Manager by reproducing, displaying, distributing, broadcasting, or creation of derivative works incorporating the work.

67.     PLW knew that the copyright to the work belonged to Dale and that it did not have permission to exploit the work.

68.     PLW knew that its acts constituted copyright infringement.

69.     PLW's conduct was willful within the meaning of the Copyright Act.

70.     As a result of its wrongful conduct, PLW is liable to Dale for copyright infringement pursuant to 17 U.S.C. § 501.  Dale has suffered, and will continue to suffer, substantial losses, as a result of PLW's conduct.

71.     Dale is entitled to recover damages, which include its losses and any and all profits Defendant has made as a result of its wrongful conduct.  17 U.S.C. § 504.  Alternatively, Dale is entitled to statutory damages for willful infringement

1    of $150,000 per infringed work under 17 U.S.C. § 504(c).

2    72.    Dale is entitled to recover its attorneys' fees and costs of suit

3    pursuant to 17 U.S.C. § 505.

4    73.    There is no adequate remedy at all to prevent the further infringement

5    by Defendant of Dale's copyrights and therefore Dale is entitled to a temporary

6    and permanent injunction barring Defendant from infringing Dale's copyrights

7    pursuant to 17 U.S.C. § 502.

8    ## SECOND CAUSE OF ACTION FOR

9    ## BREACH OF CONTRACT

10   **(By Dale Egelhoff Against Pacific Lightwave, A California Corporation,**

11   **Cove Electric, Inc. and Does)**

12   74.    Plaintiffs incorporate by reference paragraphs 1 through 73 of this

13   Complaint as though set forth herein in their entirety.

14   75.    Dale and Cove entered into an oral agreement for Dale to receive

15   compensation for his work on behalf of Linknet and PLW.

16   76.    Dale and PLW further entered into an oral agreement for Dale to

17   receive compensation for his work on behalf of PLW.

18   77.    Dale has performed all covenants and conditions required of him

19   under the oral agreements, except as Dale has been excused from having to

20   perform such covenants and conditions.

21   78.    All conditions, if any, required for performance by PLW and Cove

22   have occurred.

23   79.    Despite demand therefore, PLW and Cove have breached the

24   agreements by failing to pay amounts owing thereunder.

25   80.    As an actual and foreseeable result of Cove's breaches of the oral

26   agreements, Dale has sustained damages in an amount to be proven at time of

27   trial, in no event less than $60,000 to date.

28   81.    As an actual and foreseeable result of PLW's breaches of the oral

1   agreements, Dale has sustained damages in an amount to be proven at time of
2   trial, in no event less than $26,041.69 to date.

3                    **THIRD CAUSE OF ACTION FOR**
4          **INTERCEPTION OF ELECTRONIC COMMUNICATIONS**
5              **(By Dale Egelhoff Against Simon Bojkovsky and Does)**

6          82.    Plaintiffs incorporate by reference paragraphs 1 through 82 of this
7   Complaint as though set forth herein in their entirety.

8          83.    On or before October 28, 2011, Simon intentionally intercepted and
9   used personal emails between Dale and third parties by the use of deceptive and
10  illicit means, including hacking.

11         84.    Simon's interception of Dale's personal emails was a violation of 18
12  U.S.C. § 2511, the Federal Wiretap Laws.

13         85.    The email intercepted by Simon was in connection with Dale's
14  business dealings and Dale has suffered actual damages in an amount to be proven
15  at trial as a direct result of Simon's illegal conduct.

16         86.    The email intercepted by Simon was in connection with Dale's
17  business dealings and Simon has profited in an amount to be proven at trial as a
18  direct result of Simon's illegal conduct.

19         87.    Alternatively, Dale is entitled to statutory damages of not less than
20  $10,000 pursuant to 18 U.S.C. § 2520(c)(2)(B) as a result of Simon's illegal
21  conduct.

22                    **FOURTH CAUSE OF ACTION FOR**
23       **UNAUTHORIZED ACCESS OF ELECTRONIC COMMUNICATIONS**
24        **(By Dale Egelhoff and Laurie Egelhoff Against Simon Bojkovsky,**
25                   **Allison Bojkovsky and Does)**

26         88.    Plaintiffs incorporate by reference paragraphs 1 through 87 of this
27  Complaint as though set forth herein in their entirety.

28         89.    On or before October 28, 2011, Simon intentionally accessed and

1  used personal emails between Dale and third parties by the use of deceptive and

2  illicit means, including hacking.

3       90.   On or before October 28, 2011, Allison intentionally accessed and

4  used personal messages on Laurie's Facebook account by the use of deceptive and

5  illicit means, including hacking.

6       91.   The wrongful conduct by Simon and Allison were violations of 18

7  U.S.C. § 2701, the Stored Communications Act.

8       92.   The electronic communications accessed by Simon were in

9  connection with Dale's business dealings and Dale has suffered actual damages in

10  an amount to be proven at trial as a direct result of Simon's illegal conduct.

11       93.   The electronic communications accessed by Simon were in

12  connection with Dale's business dealings and Simon has profited in an amount to

13  be proven at trial as a direct result of Simon's illegal conduct.

14       94.   Some of the electronic communications accessed by Allison were in

15  connection with Dale and Laurie's business dealings and Dale and Laurie have

16  suffered actual damages in an amount to be proven at trial as a direct result of

17  Allison's illegal conduct.

18       95.   Some of the electronic communications accessed by Allison were

19  deeply personal to Laurie and not intended to be subject to public view and Laurie

20  has suffered general damages in an amount to be proven at trial as a direct result

21  of Allison's illegal conduct.

22       96.   Alternatively, Dale and Laurie are each entitled to statutory damages

23  of not less than $1,000 per violation pursuant to 18 U.S.C. § 2707(c) as a result of

24  Simon and Allison's illegal conduct.

25       97.   The illegal conduct by Simon and Allison stated herein was a willful

26  and intentional violation of the Stored Communications Act, entitling Dale and

27  Laurie to punitive damages pursuant to 18 U.S.C. § 2707(c).

28  ///

# FIFTH CAUSE OF ACTION FOR

## VIOLATIONS OF COMPUTER FRAUD AND ABUSE ACT

**(By Dale Egelhoff Against Simon Bojkovsky, Allison Bojkovsky, and Does)**

98.   Plaintiffs incorporate by reference paragraphs 1 through 98 of this Complaint as though set forth herein in their entirety.

99.   On or about December 13, 2010, Simon, Allison, and/or Does knowingly caused damage to a protected computer by the act of accessing and deleting all of the emails on Dale's personal email account without authorization by means of hacking.

100.   The illegal conduct by Simon, Allison, and/or Does destroyed data directly related to Dale's business dealings, and required extensive labor and expense to reconstruct some of the lost data, to the extent possible, and accordingly damaged Dale in an amount not less than $5,000.

101.   The wrongful conduct by Simon, Allison, and/or Does were violations of 18 U.S.C. § 1030, the Computer Fraud and Abuse Act.

# SIXTH CAUSE OF ACTION FOR

## VIOLATIONS OF CALIFORNIA PUBLIC UTILITIES ACT

**(By Dale Egelhoff and Laurie Egelhoff Against Pacific Lightwave, A**

**California Corporation, and Does)**

102.   Plaintiffs incorporate by reference paragraphs 1 through 101 of this Complaint as though set forth herein in their entirety.

103.   On multiple occasions, in no event earlier than December 2010, PLW did allow or fail to reasonably prevent access to Dale's and Laurie's private information, including passwords and personal accounts, transmitted on or through, or stored on or by means of, PLW's public services, resulting in unauthorized access of Dale's and Laurie's private information by Simon.

104.   PLW's failure to protect the privacy of Dale's and Laurie's private information was a violation of California law and the California State Constitution

1    subjecting PLW to civil penalties of up to $50,000 for each offense pursuant to

2    California Public Utilities Code, section 2107.

3       105.   The intention of PLW and/or Does in so doing was to sabotage and

4    otherwise damage Dale's ability to make a living or protect his rights in

5    connection with his interests in PLW.  In committing the wrongful acts stated

6    herein PLW and/or Does were motivated by malice and intent to harm Dale as

7    acts of revenge for his refusal to abdicate his rights in connection with PLW.

8       106.   The acts or omissions of PLW stated herein were wilful, subjecting

9    PLW to punitive damages pursuant to California Public Utilities Code, section

10    2106.

## SEVENTH CAUSE OF ACTION FOR
## VIOLATIONS OF CALIFORNIA PENAL CODE, SECTION 502

### (By Dale Egelhoff Against Simon Bojkovsky, Allison Bojkovsky, and Does)

14       107.   Plaintiffs incorporate by reference paragraphs 1 through 106 of this

15    Complaint as though set forth herein in their entirety.

16       108.   On or about December 13, 2010, Simon, Allison, and/or Does

17    knowingly accessed and without permission altered, damaged, deleted, destroyed,

18    and otherwise accessed and made use of Dale's data, namely his personal emails

19    by means of hacking.

20       109.   The intention of Simon, Allison, and/or Does in so doing was to

21    sabotage and otherwise damage Dale's ability to make a living or protect his

22    rights in connection with his interests in PLW.  In committing the wrongful acts

23    stated herein Simon, Allison, and/or Does were motivated by malice and intent to

24    harm Dale as acts of revenge for his refusal to abdicate his rights in connection

25    with PLW.

26       110.   The wrongful conduct by Simon, Allison, and/or Does were

27    violations of California Penal Code, section 502, subdivision (c).

28       111.   Simon, Allision, and/or Does' acts herein constitute fraud and

1    oppression and show clear malice on the part of said defendants against Dale.   In

2    addition, said defendants' acts were willful, intentional, and purposeful.   Said

3    defendants' conduct was such that Dale is entitled to exemplary damages to

4    punish said defendants and deter future harms like those suffered by Dale.

5                    **EIGHTH CAUSE OF ACTION FOR**

6                    **TRESPASS TO CHATTELS**

7    **(By Dale Egelhoff Against Simon Bojkovsky, Allison Bojkovsky, and Does)**

8            112.   Plaintiffs incorporate by reference paragraphs 1 through 111 of this

9    Complaint as though set forth herein in their entirety.

10           113.   Simon, Allison, and/or Does did trespass to the chattels of Dale by

11   intentionally accessing his personal email account without authorization and doing

12   damage thereon by deleting the entire contents thereof.

13           114.   The intention of Simon, Allison, and/or Does in so doing was to

14   sabotage and otherwise damage Dale's ability to make a living or protect his

15   rights in connection with his interests in PLW.   In committing the wrongful acts

16   stated herein Simon, Allison, and/or Does were motivated by malice and intent to

17   harm Dale as acts of revenge for his refusal to abdicate his rights in connection

18   with PLW.

19           115.   Said defendants' wrongful acts caused and proximately caused injury

20   to Dale because the emails deleted were in connection with Dale's business

21   dealings and Dale has suffered actual damages in an amount to be proven at trial.

22           116.   Said defendants' wrongful acts herein constitute fraud and oppression

23   and show clear malice on the part of said defendants against Dale.   In addition,

24   said defendants' acts were willful, intentional, and purposeful.   Said defendants'

25   conduct was such that Dale is entitled to exemplary damages to punish said

26   defendants and deter future harms like those suffered by Dale.

27   ///

28

## NINTH CAUSE OF ACTION FOR

## INVASION OF PRIVACY

**(By Dale Egelhoff and Laurie Egelhoff Against Simon Bojkovsky, Allison Bojkovsky, and Does)**

117.   Plaintiffs incorporate by reference paragraphs 1 through 116 of this Complaint as though set forth herein in their entirety.

118.   On or before October 28, 2011, Simon intentionally intercepted and used personal emails between Dale and third parties by the use of deceptive and illicit means, including hacking.

119.   On or before October 28, 2011, Allison intentionally obtained unwarranted access to Laurie's Facebook account by means of hacking.  In so doing, Allison intentionally intruded in Laurie's private affairs, including private messages between Laurie and her daughter.

120.   Some of the private messages accessed by Allison were in connection with Dale and Laurie's business dealings and Dale and Laurie have suffered actual damages in an amount to be proven at trial as a direct result of Allison's illegal conduct.

121.   Some of the private messages accessed by Allison were deeply personal to Laurie and not intended to be subject to public view and Laurie has suffered general damages in an amount to be proven at trial as a direct result of Allison's illegal conduct.

122.   As a result of said defendants' wrongful conduct, Dale and Laurie are entitled to treble damages pursuant to California Penal Code, section 637.2, subdivision (a)(2).

123.   Alternatively, as a result of said defendants' wrongful conduct, Dale and Laurie are each entitled to statutory damages in the amount of $5,000 per wrongful intrusion pursuant to California Penal Code, section 637.2, subdivision (a)(1).

124.   Said defendants' wrongful acts herein constitute fraud and oppression and show clear malice on the part of said defendants against Dale and Laurie.  In addition, said defendants' acts were willful, intentional, and purposeful.   Said defendants' conduct was such that Dale and Laurie are entitled to exemplary damages to punish said defendants and deter future harms like those suffered by Dale and Laurie.

## TENTH CAUSE OF ACTION FOR
## VIOLATION OF CALIFORNIA LABOR CODE, SECTION 202
### (By Dale Egelhoff Against Pacific Lightwave, A California Corporation and Does)

125.   Plaintiffs incorporate by reference paragraphs 1 through 124 of this Complaint as though set forth herein in their entirety.

126.   Dale was allegedly terminated from his employment with PLW on November 10, 2010.  On that date, Dale was owed not less than $26,041.69 in back wages.  In violation of California Labor Code, section 202, PLW did not pay said amount to Dale within 72 hours of termination.

127.   Dale is entitled to all amounts owing at the time of his termination and wrongfully withheld in violation of California Labor Code, section 202.

128.   In addition, Dale is entitled to continuing wages as a penalty for PLW's violation of California Labor Code, section 202, pursuant to California Labor Code, section 203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment jointly and severally and/or separately as appropriate against Defendants cumulatively and/or alternatively, as appropriate, as follows:

1.   For actual damages according to proof at trial, but in no case less than $600,000;

2.   For additional actual, consequential, and other special damages in an

1             amount according to proof at trial;

2       3.     For the amount of profits earned by the aforesaid defendants through

3             the wrongful acts stated herein;

4       4.     For statutory damages for copyright infringement of $150,000;

5       5.     For statutory damages for violation of the Federal Wiretap Laws of

6             $10,000;

7       6.     For statutory damages for violations of the Stored Communications

8             Act of $1,000 per violation;

9       7.     For statutory damages pursuant to California Penal Code, section

10           637.2, subdivision (a)(1) of not less than $20,000 in total;

11      8.     For penalties pursuant to California Labor Code, section 203;

12      9.     For penalties pursuant to California Public Utilities Code, section

13           2107 of not less than $250,000 in total;

14     10.    For treble damages pursuant to California Penal Code, section 637.2,

15           subdivision (a)(2);

16     11.    For a temporary and permanent injunction prohibiting Defendants

17           from infringing on Dale's copyrights;

18     12.    For reasonable attorneys' fees pursuant to statute(s);

19     13.    For punitive damages in an amount sufficient to punish Defendants

20           and deter future conduct of the kind suffered by Plaintiffs;

21     14.    For punitive damages pursuant to California Public Utilities Code,

22           section 2106;

23     15.    For prejudgment interest from the date(s) of injury;

24     16.    For costs of suit;

25   ///

26

27

28

17.   For such other and further relief as the Court deems just, equitable, and proper.

DATED:  May 30, 2012                    JOSHUA R. FURMAN LAW CORP.

By: _____
JOSHUA R. FURMAN
*Attorney for Plaintiffs,*
DALE EGELHOFF &
LAURIE EGELHOFF

1
## DEMAND FOR JURY TRIAL

2       Plaintiffs DALE EGELHOFF and LAURIE EGELHOFF hereby demand a

3  trial by jury.

4

5  DATED:  May 30, 2012                    JOSHUA R. FURMAN LAW CORP.

6

7                                          By:  _____

8                                               JOSHUA R. FURMAN
                                                *Attorney for Plaintiffs,*
9                                               DALE EGELHOFF &
                                                LAURIE EGELHOFF
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

### CV12- 4745 RGK (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

═══════════════════════════════════════════════════════════════

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Joshua R. Furman, Bar No. 225461
JOSHUA R. FURMAN LAW CORP.
9663 Santa Monica Blvd., No. 721
Beverly Hills, CA  90210
Telephone: (310) 809-3016
Facsimile: (310) 861-0449

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE EGELHOFF, LAURIE EGELHOFF,<br><br>PLAINTIFF(S)<br><br>v.<br><br>PACIFIC LIGHTWAVE, A CALIFORNIA CORPORATION;<br>COVE ELECTRIC, INC, a California Corporation; SIMON<br>BOJKOVSKY, an individual; ALLISON BOJKOVSKY, an<br>individual; and DOES 1–10, inclusive,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV 12 - 4745 -RGK (DTB)<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): <u>PACIFIC LIGHTWAVE, A CALIFORNIA CORPORATION; COVE ELECTRIC,</u>
   <u>INC.; SIMON BOJKOVSKY; and ALLISON BOJKOVSKY</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>Joshua R. Furman</u>_____, whose address is <u>9663 Santa Monica Blvd., No. 721, Beverly Hills, CA  90210</u>_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __MAY 3 0 2012__

By: _____
   Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>DALE EGELHOFF<br>LAURIE EGELHOFF | **DEFENDANTS**<br>PACIFIC LIGHTWAVE, A CALIFORNIA CORPORATION; COVE ELECTRIC, INC, a California Corporation; SIMON BOJKOVSKY, an individual; ALLISON BOJKOVSKY, an individual; and DOES 1-10, inclusive, |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>Joshua R. Furman, Bar No. 225461, JOSHUA R. FURMAN LAW CORP.,<br>9663 Santa Monica Blvd, No. 721, Beverly Hills, CA 90210<br>Telephone: (310) 809-3016 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No       ☑ MONEY DEMANDED IN COMPLAINT: $ 1,000,000 (not less than)

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
17 U.S.C. § 501, Infringement of software copyright; 18 U.S.C. §§ 1030, 2511, 2701, Hacking into protected computers and electronic communications

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER<br>PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☑ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

# CV12-4745

**FOR OFFICE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                            ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                            ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                            ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Plaintiff, Dale Egelhoff, Placer County<br>Plaintiff, Laurie Egelhoff, Placer County |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Defendant, Pacific Lightwave, A California Corporation, Riverside Cnty<br>Defendant, Cove Electric, Inc., Riverside County<br>Defendants, Simon & Allison Bojkovsky, Riverside County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____     Date May 30, 2012

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |