# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-04745-RGK (DTBx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | *Dale Egelhoff v. Pacific Lightwave et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(IN CHAMBERS) Order re: Defendant PLW's Motion for New Trial, or Alternatively, to Grant Remittitur in Amending the Judgment (DE 181)**

## I.  INTRODUCTION

On May 30, 2012, Dale and Laurie Egelhoff (collectively, "Plaintiffs") filed a Complaint against Pacific Lightwave ("PLW"), Cove Electric, Inc., Simon Bojkovsky, and Allison Bojkovsky (collectively, "Defendants"). At trial, the only claims remaining against PLW were Breach of Contract and Violation of California Labor Code §202.[1]

On July 10, 2013, trial commenced. The jury returned a verdict on July 12, 2013. Pursuant to that verdict, the Court entered Judgment in favor of Dale Egelhoff, against PLW, in the amount of $106,494.23.

By way of its current motion, PLW seeks a new trial. Alternatively, PLW seeks remittitur of the judgment amount to $17,500.03. For the following reasons, the Court **denies** PLW's motion.

## II.  FACTUAL BACKGROUND

Plaintiffs alleged the following pertinent facts in their Complaint:

In April 2007, Simon Bojkovsky's father, Larry, hired Dale Egelhoff to work on the telecommunications operations of Linknet Communications. Larry had agreed to pay Mr. Egelhoff a consulting fee of $5,000 per month, which was paid through Larry's other company, Cove Electric, Inc. Mr. Egelhoff was not an employee of either Linknet or Cove. Rather, the consulting fee was a retainer to ensure that Mr. Egelhoff would be available whenever his expertise was needed.

In October 2007, Larry and Mr. Egelhoff entered into a new agreement. Under this agreement, Mr. Egelhoff would work as a full-time independent contractor for Cove for $7,500 per month for the remainder of

---

[1] Plaintiffs initially alleged two additional claims against PLW: (1) Copyright Infringement; and (2) Violation of Public Utilities Act. The Court dismissed the Public Utilities Act claim pursuant to PLW's Motion for Judgment on the Pleadings, and Plaintiffs abandoned their Copyright Infringement claim at trial.

2007. Starting January 2008, Mr. Egelhoff would then draw a salary of $150,000 per year.

Subsequently, Larry decided to transition Linknet into another corporation. Mr. Egelhoff was tasked with overseeing operations of this new company, which was eventually named PLW. As a result of the transition, Mr. Egelhoff agreed with Larry to maintain his $7,500 per month pay, and instead take a $60,000 bonus at the end of 2008.

In late 2008, early 2009, Larry transferred his ownership rights to his son, Defendant Simon Bojkovsky, and Mr. Egelhoff, who each provided capital contributions to PLW. Around this time, Larry passed away. Mr. Egelhoff began working for PLW pursuant to the same arrangement he had with Larry. In April 2009, Mr. Egelhoff requested a Form 1099 and the $60,000 bonus accrued from 2008. He was refused. In April 2010, Mr. Egelhoff became a regular employee of PLW, with an annual salary of $150,000. In November 2010, PLW terminated Mr. Egelhoff's employment.

## III.    <u>JUDICIAL STANDARD</u>

Federal Rule of Civil Procedure 59 ("Rule 59") allows a court, on motion, to grant a new trial. Rule 59(a). The rule, however, does not specify the grounds on which a motion for a new trial may be granted. Fed. R. Civ. P. 59; *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Rather, courts are "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Historically recognized grounds include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). In considering a motion for a new trial, courts have discretion to weigh the evidence and assess the credibility of witnesses. *Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 190 (9th Cir. 1989). The grant of a new trial is "confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).

Under Rule 59, a party may also file a motion to alter or amend a judgment. Fed. R. Civ. P. 59(e). "There are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)).

## IV.    <u>DISCUSSION</u>

PLW argues that the Court should grant a new trial or remittitur because (1) the jury verdict runs contrary to the clear weight of evidence; (2) the evidence fails to show that PLW willfully failed to pay wages; (3) the Court erred in admitting evidence of damages beyond those alleged in the Complaint, and (4) the Court erred in allowing unsupported accounting calculations without substantiation by expert testimony. The Court disagrees and addresses each argument in turn.

### A.    <u>The Evidence Supports the Jury's Verdict as to Damages</u>

In its Verdict, the Jury awarded Mr. Egelhoff $60,000 for breach of contract, and $29,186.63 in unpaid wages. PLW challenges both of these awards.

#### 1.    *Breach of Contract*

As to the breach of contract award, PLW points to Simon Bojkovsky's testimony that PLW never agreed to pay Mr. Egelhoff a $60,000 bonus. PLW also argues that Complaint alleges damages of $60,000 only in connection to a breach by Cove, and that Mr. Egelhoff admitted PLW never assumed the liabilities of Linknet or Cove. Finally, PLW argues that an award of $60,000 constitutes double damages to which Mr. Egelhoff is not entitled.

The record shows, however, that Plaintiffs introduced evidence to the contrary. Specifically, the trial transcript contains testimony that both Larry and Simon Bojkovsky agreed to pay Mr. Egelhoff a $60,000 bonus

for his work for Linknet in 2008, and that PLW did, in fact, assume all assets and liabilities of Linknet. (Trial Transcript at 96:14-23 and 20:7-14.)

Based on the foregoing, the Court finds that the Jury made a finding of credibility that is, in fact, supported by evidence contained in the record.

### 2. _Unpaid Wages_

PLW also argues that the evidence supports, at most, an award of $17,500.03 in unpaid wages. PLW states that Mr. Egelhoff introduced only a portion of all the checks paid to him, and that tax documents establish that Mr. Egelhoff was, in fact, paid more than he represented to the jury.

The evidence shows, however, that Bojkovsky could not answer whether the checks introduced into evidence by Plaintiffs were the only checks issued. Mr. Egelhoff, on the other hand, testified that the checks in evidence were the only salary checks he received from PLW in 2010. Although the tax documents offered by PLW contradict Plaintiffs' evidence, the Court again finds that the Jury's verdict does not run contrary to the clear weight of evidence.

### B. The Evidence Supports the Jury's Finding of Willfulness

According to PLW, Plaintifsf presented no evidence that PLW willfully refused to pay his wages. To support its motion, PLW relies primarily[2] on Mr. Egelhoff's testimony that "any money paid to him in 2010 would have been in his own discretion." (_See_ PLW's Mot. at 12:3-4.) PLW argues that, based on this testimony, any failure to take a check from PLW was Mr. Egelhoff's own doing and not the result of PLW conduct.

PLW's argument is unpersuasive, as it mischaracterizes Mr. Egelhoff's testimony. Mr. Egelhoff testified that he had discretion to pass on a paycheck, depending on how the company was doing, and "take it later when the jobs are caught up." (Trial Transcript at 115:13-17.) The fact that Mr. Egelhoff had discretion in 2010 to pass on a paycheck does not establish that he had the ability to take a check whenever he wanted, particularly upon termination. Plaintiffs introduced evidence that PLW failed to properly calculate wages due to Mr. Egelhoff upon termination. As discussed in Section IV.A.2. above, the Jury determined that PLW owed Mr. Egelhoff additional wages and failed to pay such wages. As such, the Court finds that PLW has failed to satisfy its burden on this issue.

### C. The Evidence of Damages Did not Contradict Allegations in the Complaint

PLW argues that the Court abused its discretion in allowing inadmissible evidence of damages beyond the damages alleged in the Complaint. Specifically, PLW pins its argument on the following two allegations in the Complaint:

> 80. As an actual and foreseeable result of Cove's breaches of oral agreements, Dale sustained damages in an amount to be proven at time of trial, in no event less than $60,000 to date.
>
> 81. As an actual and foreseeable result of PLW's breaches of oral agreements, Dale sustained damages in an amount to be proven at time of trial, "in no event less than $26,041.69 to date.[3]

PLW argues that Mr. Egelhoff specifically alleged $60,000 in damages against Cove, not PLW; and Mr.

---

[2] While not entirely clear, PLW also appears to rest its argument on the premise that no additional wages were owing to Mr. Egelhoff. As discussed in Section IV.A.2. above, the Jury was reasonable in finding that PLW did, in fact, owe Mr. Egelhoff additional wages.

[3] The $60,000 amount is presumably the 2008 bonus to which Larry agreed. (_See_ Compl. ¶¶ 17, 35-36.) The $26,041.69 is the total of $20,247.06 in pay Mr. Egelhoff did not receive in 2010, and $5,794.63 of underpayment for his final pay period at PLW. (_See_ Compl. ¶¶ 43 and 52.)

Egelhoff's alleged damages against PLW were less than the $29,186.63 Mr. Egelhoff claimed at trial.

The Court finds PLW's argument specious, as the language immediately preceding the specific monetary amounts expressly state, "in no event less than ...." Absent any other basis for its contention that the evidence was admitted over objection and in error, PLW simply fails to satisfy it burden on this issue.

### D.      The Accounting Calculations Did not Necessitate Expert Testimony

PLW argues that the Court erred in allowing Mr. Egelhoff to provide supported accounting calculations without substantiation by an expert economist or expert accountant. Again, the Court finds PLW's argument unavailing.

It is well-established that expert testimony at trial is appropriate in matters where scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence. *See* Fed. R. Evid. 702. The evidence submitted by Mr. Egelhoff consisted of calculations of wages owed over multiple pay periods. The Court finds that the accounting evidence submitted by Mr. Egelhoff sufficiently straightforward, and able to be understood without any scientific, technical or other specialized knowledge.

### E.      Remittitur

For the same reasons discussed above, the Court finds that PLW's request for remittitur is unwarranted.

## V.      CONCLUSION

Based on the foregoing, the Court **denies** PLW's Motion for New Trial, or Alternatively, to Grant Remittitur.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer

_____